SHORTESS, Judge.
This is a suit to have declared null contracts made between individual heirs and the man they retained to pursue their interests in two successions. Although the trial court did find that the contracts had been rescinded by the heirs, they appealed, unsatisfied with several particulars of the declaratory judgment. For us to discuss the trial court’s decree and the plaintiffs’ assignments of error, we must first explain the familial relationship of the heirs [1] and the tortuous legal background of the parties.
FACTS
William Cotten died in 1955, leaving (among other heirs) his wife Ruby and daughter Penelope. Ruby was later remarried to Raymond Dickey who in 1965 adopted Penelope. In 1970, Penelope married William Scott Humes; the couple had no children and on April 16, 1973, Penelope Cotten Dickey Humes died intestate. She was survived by William, her husband, and ascendents Ruby, Raymond Dickey and two sisters (both by virtue of their relation to Penelope’s adoptive father, Raymond Dickey), Janis Carpenter and Susan Cormier. (Hereinafter, Ruby, Raymond, Janis and Susan may be referred to simply as the “heirs.”)
Roland Kidd (father of Kim M. Kidd, a defendant herein) testified that he was first made aware of the Dickey family’s situation through a Mr. Champagne, an associate of Ruby’s second husband, Robert J. Boudreaux, Jr. Champagne told Kidd that “there was a possibility that she [Ruby] needed help” in claiming any property she might stand to receive through Penelope’s death. Kidd decided to “look into it” because he thought he could help her since he was an abstractor.[2]
After Kidd visited Ruby twice at her home in Galena Park, Texas, they met in Lake Charles and signed a “Recovery Contract” on May 14,1974, enlisting the services of Kim M. Kidd to research and pursue (with the aid of legal counsel) any property the heirs could recover through Penelope’s death.[3] This contract was later voided to allow signing of an “Employment Contract” on June 17, 1974, the terms of which are substantially identical to those of the contracts now before us, except that the June 17 contract named the law firm Triche & Sternfels as the attorneys to handle all “legal services and litigation” in the matter.
During this time, Kidd and Robert G. Haik, attorney at law, had been involved in another business dealing, and Haik was aware of the Penelope Humes matter. Kidd testified that Triche did not return his phone calls, and when he finally contacted Triche on the matter, Triche told him that Haik had “confronted [Triche] to be co-counsel” and that he (Triche) would rather get out of it altogether. Kidd testified that he assented, and on December 3, 1973, he, his son Kim, and Robert Haik, met at the Kidd home and signed a letter agreement *27 for Haik to “continue research and whatever legal requirements are necessary” in placing “Mrs. Dickey” in possession of “certain Louisiana properties.” The letter stated that “acceptance of this letter will institute your employment,” and it was signed in the place provided for acceptance by Robert Haik. On December 5, 1974, Kidd dismissed Triche as his attorney in the matter.
Since the June 17 contracts between Kidd and the heirs specified the Triche & Sternfels firm as attorneys, new contracts (the subject of this suit) were signed by Ruby, Raymond, Janis and Susan on December 7, 1974, in Galena Park. On December 8, Kim Kidd signed the contracts in Louisiana, and the contracts were recorded in the St. Mary Parish conveyance records on March 12, 1975.[4]
These “Employment Contraet(s)” stated that Kim Kidd would perform a “search of public records” of Louisiana and Texas and prepare abstracts of title to determine the possibility of the heirs’ ownership of property from the estates of Penelope Humes and William Cotten. Kidd was also to “perform all necessary investigative and curative work, under the advice and direction of counsel”, and to “employ and engage legal counsel to prosecute any claim, demand, and cause of action, for the purpose of establishing heirship and inheritance.” The heirs reserved the right to engage additional counsel “to assist in the [presentation] of any claims in the aforementioned successions and the handling of any litigation, subject to approval” of Kidd. The parties specified that Kidd did not gain any “interest in any of the succession or property involved” through the contracts, but would receive “a contingent fee of fifty percent (50%) of any and all property ... recovered by [Kidd].”
On February 19, 1975, the heirs signed an “Agreement” with Haik to perform substantially the same services for them as Kidd was bound to perform under his “Employment Contract.” This agreement was recorded in St. Mary Parish on March 12, 1975 [5], and on June 10, 1975, the heirs through Haik intervened in the Succession of William Mansfield Cotten. On September 24, 1976, they filed a “Petition for Nullity or Rescission of Contracts,” naming Kim M. Kidd as defendant. Kidd answered this petition, and on December 21, 1978, filed his own intervention in the Succession of Penelope Humes. The hearings on these two matters (the heirs’ petition for declaratory judgment and Kidd’s intervention) were consolidated by joint motion of the parties on April 6, 1983, and a hearing was held August 2, 1983. The judgment rendered after this hearing forms the subject of this appeal.
ISSUES BEFORE THE TRIAL COURT
The heirs’ petition alleges that they retained Haik as their attorney to “do all things necessary to protect and further their interests with respect to certain properties that the deceased Penelope Dickey Humes may have inherited prior to her death .... ” They further allege three attempts by Haik (on March 10, 1975, in person, and by certified mail on March 10 and April 3, 1975) to “meet with Kim Kidd” and “set aside the [Kidd] contracts.” The heirs allege various vices of consent and capacity regarding the Kidd contracts, and that they “have been null and void since their inception.” They pray for a judgment “decreeing the contracts null and void.”
Kim M. Kidd’s intervention denies the incapacities and lack of consent, and alleges his contracts to be valid and enforceable. Kidd maintains that the heirs-Haik contract was in contravention of his employment contract, and prays for judgment, inter *28 alia, declaring his contract with the heirs valid and enforceable and Haik's contract null and void.
The trial court consolidated the two cases and ordered that:
only the merits of RAYMOND L. DICKEY, ET AL, versus KIM M. KIDD, bearing Docket No. 52,377 together with all claims by KIM M. KIDD as petitioner in intervention against ROBERT G. HAIK as defendant in intervention as included in said KIM M. KIDD’s Petition for Intervention filed in the SUCCESSION OF PENELOPE DICKEY HUMES, No. 9658, shall be tried on said August 2, 1983 and the trial on the merits of the remaining claims of the SUCCESSION OF PENELOPE DICKEY HUMES, Probate Docket No. 9658, shall be continued without date and pending further ordered (sic) of the Court.
The trial court rendered judgment on August 23, 1983, in favor of “plaintiffs in Suit No. 52,377”[6] and against Kim Kidd “cancelling and rescinding those contracts entered into between said plaintiffs and KIM M. KIDD ... subject to recovery in favor of KIM M. KIDD for his services rendered pursuant to said contracts on a quantum meriut (sic) basis, the amount of which is to be determined at a later hearing.” The court further rendered judgment for Kim Kidd (in his intervention) against Robert Haik and the heirs, awarding Kidd “some basis of recovery ... the extent of which is to be determined at the final hearing on the merits of this litigation.”
In its reasons for judgment the trial court found that the “employment contract” was actually a mandate, “[a]n act by which one person gives power to another to transact for him and in his name, one or several affairs.” He found this mandate revocable at will by the principal under La.C.C. art. 3028, since it was not “coupled with an interest.” However, the court found that “had it not been for [Kidd] the Dickeys may not have learned or entered into any contracts or litigation to recover what rights they may have.” Citing Bown v. Holland, 392 So.2d 726, 727 (La.App. 3rd Cir.1980), the court found that Kidd was entitled to recover on a quantum meruit basis “the value of the services that he performed prior to the revocation of the contract,” and that Kidd “has certain rights connected with the mandate as an intervenor in the succession of Penelope Humes ... but that such rights cannot be determined at this time until the litigation in that succession has terminated.”
As to the relationship between Robert Haik and Kim Kidd, the trial court found that Haik violated the fiduciary duty he owed Kidd as his client when he contracted with the heirs to “get an employment contract from them and leaving Mr. Kidd out.” He found it “premature” to consider what type of recovery Kidd may be entitled to from Haik but noted that Haik had a 40% contingency fee contract with the Dickeys, and stated that Kidd “would be entitled to something along those lines.” The court deferred the ultimate question of quantum until settlement or termination of the litigation in the successions, and in the Dickey v. Kidd suit (No. 52,377) he cast “the plaintiffs” for costs of court due to their “bad faith.”
THE ISSUE ON APPEAL
Both Kidd and Haik in brief agree with the court’s construction of the contracts as *29 mandates, revocable at will. We must note a more compelling reason to revoke the contracts and render the appropriate judgment under these facts. La.C.C.P. art. 2164.
The conduct of Kidd and Haik throughout this entire matter demonstrated either total ignorance of or contempt for the ethical standards set forth in our Code of Professional Responsibility, LSA-R.S. Title 37 Ch. 4 (Appendix), LSA-R.S. 37:212, 213.
The contracts between Kidd and the heirs provided that Kidd was to hire an attorney to pursue their succession claims. This clause constitutes an attempt to engage Kidd in the unauthorized practice of law and requires voidance of his contracts with the heirs. LSA-R.S. 37:213(2) (West 1950) forbids any natural person not an attorney at law from “furnishpng] attorneys or counsel or an attorney and counsel to render legal services.” The contract between Kidd and the heirs had as its cause an unlawful purpose and can have no effect. LSA-C.C. arts. 1892, 1893, 1895 (1870); Gray v. Atkins, 331 So.2d 157, 165 (La.App. 3rd Cir.1976), writ refused, 334 So.2d 433 (La.1976). For a most concise and excellent explanation of the rationale supporting this result we direct the parties herein to the Code of Professional Responsibility, Canon 3, EC 3-1 to 3-6 and DR 3-101(A).
Likewise, the contract between Kidd and Haik, and the contracts executed between Haik and the heirs are similarly void ab initio. Although this case does not contain the strong evidence of a conspiracy to engage in the unauthorized practice of law that is found in Gray, we note the language at page 166 of that opinion:
any contracts entered into by [the attorney and the non-attorney] pursuant to that illegal relationship are illegal and void.
(Emphasis added.).
The contracts between Haik and the heirs were tainted by Haik’s action in securing the contracts. Haik used information he received through his representation of Kidd for his personal advantage and to the disadvantage of Kidd. Haik accepted employment by the heirs when he knew or should have known that his representation of Kidd would be adversely affected. See Code of Professional Responsibility, Canon 4, EC 4-1, 4-5, DR 4-101, Canon 5, EC 5-2, DR 5-101 and DR 5-105.
After careful review, we note with agreement the trial court’s findings that the heirs were in bad faith, but we also find that the rest of the parties to this litigation do not have clean hands. We concur in the spirit of the Gray opinion, and declare all the aforementioned “contracts” to be null and void ab initio. ■
For the foregoing reasons, all contracts of employment between Kim M. Kidd and/or Raymond Kidd, Robert G. Haik, and Ruby Cotten Dickey, Raymond L. Dickey, Janis Blanche Dickey Sanford, Susan Dickey Cormier, and/or William Scott Humes are hereby declared null and void ab initio. We affirm that portion of the trial court judgment- which cancelled and rescinded the contracts between the heirs and Kim M. Kidd. We reverse the trial court judgment in all other respects. Costs are fixed at one-third to the heirs, one-third to Kidd, and one-third to Haik.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. The textual recitation of familial relationship is not intended as a factual finding by this court because the succession rights of the alleged heirs are not at issue in this appeal.

. There is also a letter in evidence dated February 6, 1974, from Ruby to Kidd stating that she wants him to "find out if [she is] entitled to any property as [Penelope’s] mother," and acknowledging that Kidd "will have to hire lawyers and do everything for me because I’m living in Texas." It is not clear from the record whether or not this letter preceded the contact initiated by Kidd.

.For financial reasons Roland Kidd did not wish to be named in the contract. He therefore arranged to have his 19-year-old son, Kim, contract with the heirs with the understanding that he, Roland, would perform the services as Kim’s agent. This arrangement was retained in all of the Kidds’ contracts. Kim has repeatedly ratified all of his father’s acts throughout these proceedings.

. William Humes also executed a contract, on May 14, 1975, which was recorded in the St. Mary Parish conveyance records on May 20, 1975. At the hearing on the matter counsel orally stipulated that William Hume’s contracts with Kidd were not in dispute. Despite Raymond Dickey’s death, the attorneys and the trial court decided that his contract "will be resolved one way or the other.”

. The filing stamps reveal that the Haik/heirs contract was recorded approximately thirty minutes before the Kidd/heirs contracts, all on March 12, 1975.

. The recitation of plaintiffs in the petition includes only Raymond Dickey, Ruby Dickey, Susan (and her husband Ronald), and Janis, not Robert Haik. The trial court granted a motion for devolutive appeal filed by Haik in which he claimed to be "co-plaintiff herein.” We note that he was not named as a plaintiff in the original petition, nor was it amended to name him. Therefore, we cannot recognize his purported status as a plaintiff-appellant.
However, Haik was named as a defendant in the Kidd intervention. He filed a dilatory exception alleging Kidd’s failure to join necessary parties, vagueness as to the allegations regarding Robert Haik, prematurity of the intervention and improper cumulation of the succession claims with the claims against Robert Haik individually. We find in the record no disposition of Haik’s dilatory exception (although the trial court did dispose of a similar motion made by other Cotten heirs); nor do we find an answer filed by Haik to Kidd’s intervention.